## 32103, 32104.   CRISWELL BAKING COMPANY *v.* MILLIGAN (two cases).

Decided October 14, 1948.   Rehearing denied November 11, 1948.

862

*Hewlett & Dennis, T. F. Bowden, Douglas Dennis,* for plaintiff in error.

*A. E. Wilson,* contra.

SUTTON, C. J. (After stating the foregoing facts.) ■ The defendant in error has filed motions in this court to dismiss each of these cases on the ground that there is no brief of the evidence as required by law, as the approval by the trial court of the brief of evidence in each case refers to the "brief of evidence in the cases above entitled," and the heading of the brief of evidence in each record indicates it is a brief of evidence applicable to both cases. In considering whether the brief of evidence is such a brief as required by law, this court can not consider the sufficiency of the approval of the brief of evidence by the trial court, unless the question was raised in the trial court, and in the present cases no such question was raised in the trial court. See *Charleston & W. C. Ry. Co.* v. *McElmurray,* 12 *Ga. App.* 441, 445 (78 S. E. 258) ; Code, § 6-805. The brief of evidence, at the election of the plaintiff in error, may be approved by the trial judge and made a part of the record sent to this court by the clerk of the trial court. Code (Ann.), § 6-802. "The brief of evidence on motion for new trial, filed and approved according

to law, is a part of the record, and need not, except by reference thereto, be embodied in the bill of exceptions." Code, § 6-811. "The Supreme Court, or the Court of Appeals shall not dismiss any case for any want of technical conformity to the statutes or rules regulating the practice in carrying cases to said courts, where there is enough in the bill of exceptions or transcript of the record presented, or both together, to enable the court to ascertain substantially the real questions in the case which the parties seek to have decided therein." Code, § 6-1307. The requirements for the briefs of evidence appear to have been met in the present cases. These cases grew out of the same transaction, they were tried together by agreement of counsel, and the evidence is equally applicable to either case. The mere fact of the duality of the use of the same form and content in each brief of the evidence does not render such brief ineffective as not being a brief of the evidence as required by law, where the same has been approved by the trial judge and filed as a part of the record in each case.

The motions to dismiss are without merit and are denied.

■ On the rulings on special demurrers, the only ground insisted upon is that the use of the language "that defendant was negligent in permitting said putrid, tainted, impure, deleterious, unwholesome, and poisonous substance to become an ingredient of said product" and similar language in the petition, in reference to the substance contained in the pie which was claimed to be the cause of the illness, does not name or sufficiently describe the substance, or put the defendant on notice of the identity of the substance. The allegations with reference to the tainted sausage in the case of *Armour & Co.* v. *Miller*, 39 *Ga. App.* 228 (147 S. E. 184); s. c. 169 *Ga.* 201 (149 S. E. 698), were almost identical with the language used with reference to the pie in the present cases the sausage being described as containing "impure, tainted, putrid, deleterious, and unwholesome matter." One of the grounds of special demurrer in that case was that the petition did not describe "what" the unwholesome substance was in the tainted sausage there involved, and the court held that this ground of demurrer was without merit. The *Miller* case, supra, is applicable and controlling in the present cases, and the description of the substance contained in the pie, by the use of the

language "that defendant was negligent in permitting said putrid, tainted, impure, deleterious, unwholesome, and poisonous substance to become an ingredient of said product" and similar language was sufficient to put the defendant on notice of the nature and what caused the illness of and damage to the plaintiffs, and the assignments of error on the orders overruling the special demurrers are without merit.

■ Special ground 1 of the amended motions alleges that the court erred in charging the jury that "the law requires that any person who is preparing and manufacturing for sale food products should use due care in the preparation thereof so as to avoid any poison or unwholesome substance from being contained therein." The plaintiff in error contends that the court erred in using the words "due care" instead of the words "ordinary care" in this charge. It is contended that this was not a correct statement of law; was confusing and misleading to the jury; and furnished no standard by which to measure the degree of care required of the defendant. Special ground 2 of the amended motions assigns error on the fact that the court did not instruct the jury that the degree of care required of defendant was ordinary care. Due care is defined in Black's Law Dictionary (3d ed.) p. 626, as "that care which an ordinarily prudent person would have exercised under the circumstances," and this definition is supported by numerous citations of authorities from other jurisdictions. Also see 13 Words and Phrases (Perm. Ed.) "Due care," p. 459 et seq.; 30 Words and Phrases (Perm. Ed.) "Ordinary care," p. 179 et seq.; Howard v. Waterloo, 206 Iowa 1109 (221 N. W. 812); City of Aurora v Seidelman, 34 Ill. App. 285; Stout v. Gallemore, 138 Kan. 385 (26 Pac. 2d, 573); M. A. Long Co. v. State Accident Fund, 156 Md. 639 (144 Atl. 775, 780). In Code § 105-201 ordinary diligence is defined as "that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." Under the weight of authority it appears that due care, ordinary care, and ordinary diligence are interchangeable terms. See Words and Phrases as cited supra; also 30 Words and Phrases (Perm. Ed.) "Ordinary diligence," p. 245, 246; Chicago R. I. & P. Ry. Co. v. Shelton, 135 Okl. 53 (273 Pac. 988); Cornovski v. St. Louis Transit Co., 207 Mo. 263 (106 S. W. 51); Western Union Tel. Co. v. Smith (Texas Civ.

App.), 133 S. W. 1062. "Ordinary care" and "ordinary diligence" are commonly treated as synonymous and interchangeable when applied to the same conduct in cases of injury. *Atlanta, K. & N. Ry. Co.* v. *Tilson,* 131 *Ga.* 395 (62 S. E. 281). The degree of care required of the defendant under the facts in the present cases was ordinary care, and the use by the court of the words "due care" in charging the jury, instead of the words "ordinary care," was not error. See Baltimore & O. S. W. Ry. Co. *v.* Faith, 175 Ill. 58 (51 N. E. 807). It has been held by this court and the Supreme Court that the words "ordinary care" are self-explanatory, and furnish the jury with the degree of care required of a defendant in a case, in the absence of a timely request for a further definition (*Atlantic & Birmingham Ry. Co.* v. *Smith,* 2 *Ga. App.* 294, 58 S. E. 542; *Western Union Telegraph Co.* v. *Ford,* 10 *Ga. App.* 606 (5), 74 S. E. 70; *Savannah Electric Co.* v. *Bennett,* 130 *Ga.* 597 (2), 61 S. E. 529), and we think the same can also be said to be true of the words "due care."

█ Special ground 3 of each of the motions assigns error on the charge of the court that "where either plaintiff might establish the unwholesome quality of the food and establish injury to the plaintiff from its consumption, and establish that the food as consumed by them was in the same condition as when it left the custody, possession and control of the defendant, these facts in themselves would sufficiently set forth defendant's negligence and make out a prima facie case, and . . the burden would be upon the defendant to show that the defendant used due care in the premises." Plaintiff in error contends that this was an incorrect statement of law; was an expression of opinion by the court that the proof of certain facts constituted actionable negli-. gence; imposed a greater burden on the defendant than that imposed by law; and invaded the province of the jury, as the jury alone has the right to infer negligence from certain proved facts, in the application of the doctrine of res ipsa loquitur. The court had already fully charged the jury as to the burden of proof being on the plaintiffs and that it was necessary for the plaintiffs to establish that the defendant was negligent in one or more of the particulars as alleged in the petition by a legal preponderance of the evidence, and he prefaced his remarks in giving the charge complained of and as a part of such charge by stating

"I charge you that where either of these plaintiffs established, if they have established, and on that point . . the court is expressing no opinion whatsoever." Code § 105-1101 provides that, "Any person who knowingly or carelessly sells to another unwholesome provisions of any kind, the defect being unknown to the purchaser, by the use of which damage results to the purchaser or his family, shall be liable in damages for such injury." The plaintiffs' actions were based on the alleged negligence of the defendant in manufacturing and placing on the market unwholesome food—the pie in question. By the charge on which error is assigned the court was merely stating, without any expression of opinion, one method by which the plaintiff might be able to prove negligence on the part of the defendant by inference, authorizing a finding in favor of the plaintiff, unless the defendant was able to show that it used due care in the premises. It was ruled in *McPherson* v. *Capuano & Co.*, 31 *Ga. App.* 82 (3) (121 S. E. 580), that "Where the plaintiff established the unwholesome quality of the food, with injury from its consumption, these facts in themselves would sufficiently speak of the defendant's negligence to make a prima facie case; and until the defendant is exonerated, the jury would be authorized to apply the maxim res ipsa loquitur, and to find such issue in favor of the plaintiff." A number of cases are cited in the *McPherson* case in support of this ruling, and this same principle was quoted and approved in *Copeland* v. *Curtis*, 36 *Ga. App.* 255, 256 (136 S. E. 324). "If the extraordinary character of the occurrence is sufficient to raise an inference of the negligence alleged, a prima facie case is established, and the burden of disproving negligence, especially in a case where the parties do not sustain to each other the relation of master and servant, is cast upon the defendant, to disprove negligence upon his part; this for the reason that it is more particularly within his power to explain the character and condition of the instrumentality which may have occasioned injury than within the power of the injured party." *Sinkovitz* v. *Peters Land Co.*, 5 *Ga. App.* 788 (2b) (64 S. E. 93). In *Chenall* v. *Palmer Brick Co.*, 117 *Ga.* 106 (43 S. E. 443), the first case in which a court of this State dealt directly with the res ipsa loquitur doctrine in a personal injury action, it was said: "All that the plaintiff should be required to do in the first instance is to show that the defendant

owned, operated, and maintained, or controlled and was responsible for the management and maintenance of the thing doing the damage; that the accident was of a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence. When he has shown this, he has cast a burden on the defendant, who may then proceed to show that the accident was occasioned by vis major, or by other causes for which he was not responsible." Also, see *Stamps* v. *Newton County,* 8 *Ga. App.* 229(4) (63 S. E. 947); *Payne* v. *Rome Coca-Cola Bottling Co.,* 10 *Ga. App.* 762 (73 S. E. 1087); *Davis* v. *Savannah Lumber Co.,* 11 *Ga. App.* 610(5) (75 S. E. 986); *Atlanta Coca-Cola Bottling Co.* v. *Danneman,* 25 *Ga. App.* 43 (102 S. E. 542); *Macon Coca-Cola Bottling Co.* v. *Crane,* 55 *Ga. App.* 573 (190 S. E. 879). "A 'prima facie case' is that state of facts which entitles the party to have the case go to the jury. . . 'Prima facie' means first view, that is, as it first appears; and a 'prima facie case' is one which is apparently established by evidence adduced by plaintiff in support of his case up to the time such evidence stands unexplained and uncontradicted; and the words 'prima facie' when used to describe evidence, ex vi termini imply that such evidence may be rebutted by competent testimony." 33 Words and Phrases (Perm. Ed.), "Prima Facie Case," p. 543. The charge as a whole was fair to the defendant. The jury was instructed at different times that the evidence was a matter for them to pass on and that the court expressed no opinion as to what had or had not been proved, etc., and that they would be authorized to find in favor of the defendant, if the plaintiffs had not proved their cases as alleged, by a preponderance of the evidence. We are of the opinion that the charge excepted to, when considered in connection with the charge as a whole, was not error as against the defendant, under the pleadings and facts of these cases.

■■■ Furthermore, it was alleged by the plaintiffs that in the purchase of said pie W. A. Milligan "relied upon the legal duty of defendant not to impose upon the customers of its product and the general public by baking, packing and putting on the market an impure, tainted, deleterious and unwholesome article of food unfit for human consumption, and that defendant was negligent in permitting said putrid, tainted, impure, deleterious, unwholesome and poisonous substance to become an ingredient of said

product and putting the same on the market for sale to the public and allowing the same to be sold to the public." The plaintiffs also alleged "that contained in said pie . . was a quantity unknown to him (her) of impure, tainted, putrid, deleterious and unwholesome matter, which was negligently permitted by said defendant to become mixed with the other contents of said pie; . . that defendant was negligent in permitting said putrid, tainted, impure, deleterious, unwholesome and poisonous substance to become an ingredient of its product and in putting the same on the market for sale to the public, knowing that the same was to be used for human food, and allowing the same to be sold to the public." By the allegations of the petitions the plaintiffs seem to invoke the provisions of the pure food law, enacted in 1906 and which is now contained in our Code. Under the pure food and drug act, Code § 42-109 (7), an article of food shall be deemed to be adulterated "If it consists in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance." Code § 42-9901 provides that "It shall be unlawful for any person to manufacture, sell or offer for sale, any article of food, drugs, medicines, or liquors, which is adulterated or misbranded, or which contains any poisonous or deleterious substance within the meaning of Chapter 42-1." This law is a penal statute and does not within itself purport to give a right of action to individuals. But the Supreme Court in *Donaldson* v. *Great Atlantic & Pacific Tea Co.*, 186 *Ga.* 870 (199 S. E. 213, 128 A. L. R. 456), dealt with how a plaintiff in a common-law action, similar to the present ones, could rely partly on both the pure food law and the old law as contained in Code § 105-1101, for the purpose of showing a breach of duty or negligence on the part of the defendant in such an action. It was said in that case: "The suit, however, appears to be a common-law action for damages resulting from negligence, in which the plaintiff, though relying partly on both the old and the new law, does so only for the purpose of showing a breach of duty, or negligence. At common law the suit would be termed an action of trespass on the case. . . Seemingly, it is this general form of action, to which the Code refers in the following provision: 'When the law requires one to do an act for the benefit of another, or to forbear the doing of that which may injure another, though no action be given in

express terms, upon the accrual of damage the injured party may recover.' § 105-103. It is not uncommon in actions for negligence for the plaintiff to allege various breaches of duty as constituting negligence on the part of the defendant. The plaintiff may rely upon an act or omission as constituting negligence as a matter of fact under the circumstances, or upon the violation of a statute as amounting to negligence per se or as a matter of law. Furthermore, the facts may be so pleaded as to show negligence of both classes in the same action [citing]. . . While the pure-food law was designed for the protection of the public, and did not in express terms declare other than public duties, the plaintiff as a member of the public for whose benefit it was enacted could invoke its provisions for the purpose of showing negligence as a matter of law, if injured by the violation of a duty so imposed [citing]. . . The petition alleged that the 'pig's liver' purchased from the defendant 'was in a deleterious and unwholesome condition, was contaminated by infectious matter, and was in a decomposed condition and unfit for food.' These averments were sufficient to show a violation of the duty imposed by the statute not to sell 'adulterated' food as defined therein, and reliance upon such breach as constituting negligence per se or as a matter of law; notwithstanding the petition may have contained other allegations to show negligence as a matter of fact. In pleading a cause of action, where a domestic or federal statute is relied on, it is unnecessary to incorporate a statement of the law [citing]. . . From what has been said . . it is our opinion that the pure-food and drug act of 1906 did not in any manner change or repeal the common-law rule as now stated in the Code, § 105-1101; and also that as applied to this case their relative force and meaning were not affected by the adoption of the Codes of 1910 and 1933. For immediate reference, we quote again the provisions of § 105-1101, as follows: 'Any person who knowingly or carelessly sells to another unwholesome provisions of any kind, the defect being unknown to the purchaser, by the use of which damage results to the purchaser or his family, shall be liable in damages for such injury.' In a suit for damages against a seller of unwholesome food by the use of which the plaintiff is injured, it is still necessary to prove that the defendant *either* knew of the unwholesome condition of the food or was guilty of negligence in

the transaction. But how may such negligence be established? As to civil actions, the only effect of the pure-food act is that whereas *before* its passage an action for damages resulting from negligence could be sustained only by allegation and proof of such negligence as a matter of fact, that is, according to the standard of ordinary prudence as applied to the circumstances, the plaintiff may now show negligence as a matter of law by establishing a breach of the statutory duty; or he may rely on both classes of negligence, according to the facts. In other words, the passage of this statute did not affect the nature or basis of the cause of action, but related only to the standard of care by which negligence may be determined."

The plaintiffs in these cases charge defendant with a breach of legal duty in manufacturing and selling the pie in question, which they contend was unwholesome and putrid, and that they were injured and damaged by eating the same. Under the rulings in the *Donaldson* case, supra, the plaintiff in such an action as the present ones, since the enactment of the pure-food law, may show negligence as a matter of law by establishing a breach of the statutory duty. Applying the rulings in the *Donaldson* case, supra, to the pleadings and evidence in the present cases, and considering the charge in its entirety, the excerpt, complained of in ground 3 of the motions for new trial in these cases, was not error against the defendant. Also, see s. c., 59 *Ga. App.* 79 (200 S. E. 498).

In special ground 4 of each of the motions error is assigned on the charge of the court that "if the defendant were negligent and by virtue of its negligence produced a food product which was unwholesome and if a person consumed the same when such person knew or in the exercise of ordinary care should have known of its unwholesome quality, then such a person consuming the product could not recover. However, that duty upon the part of the plaintiff would not arise until such plaintiff knew or in the exercise of ordinary care should have known of the alleged negligence of the defendant and of the alleged unwholesome condition of such food product. And the principle I have just stated to you would not apply if either of the plaintiffs in consuming this product did not know or in the exercise of ordinary care . . could not have known of its alleged unwholesome condition." The

874

plaintiff in error contends that the last sentence of this charge destroyed the benefit of the charge. The basis of this contention is that by the use of the word "either" in this sentence the meaning was conveyed to the jury that the principle would not apply to W. A. Milligan's case if Mrs. W. A. Milligan could not have ascertained the unwholesome condition of the pie, and vice versa, and the plaintiff in error points out that in W. A. Milligan's case the jury, in applying the charge, might have disregarded the evidence of W. A. Milligan that when he ate the pie it "tasted a little queer," etc., because the jury might interpret the charge to mean that both W. A. and Mrs. Milligan must know of the unwholesome condition of the pie in order to prevent either from recovering in their respective actions. The two cases were tried together and the charge here complained of is not subject to the criticism directed against it in this ground of the motions.

■ On the trial of the cases certain evidence offered by the plaintiff, including hospital records and an analysis of certain pies by an employee of the City Health Department of Atlanta, and a regulation of the Commissioner of Agriculture, was held to be inadmissible by the court under the circumstances offered. In the course of argument to the jury, counsel for the plaintiff said "Counsel for defendant by his knowledge of the law and skillful objections has succeeded in keeping out some very important evidence of plaintiffs." Counsel for defendant objected to such argument as improper in that it was critical of both the court and counsel for defendant and requested a reprimand of counsel for plaintiff by the court and an instruction to the jury that such argument was improper. The court then made a statement that counsel for defendant had the right to make objections to the evidence throughout the trial and that counsel for the plaintiff had the right to argue the case fully, and ordered the case to proceed. The argument or statement of counsel for plaintiff was neither critical of counsel for defendant nor the court, but on the contrary, was complimentary of the legal ability of defendant's counsel and the judgment of the court in sustaining the legal objections interposed by defendant's counsel. No harmful error against the defendant is shown by this ground of the motion.

■ In special grounds 6, 7, 8, and 9 of the motions error is assigned on the failure of the court to charge the jury certain re-

quested charges, as follows: (1) "These cases are what are called in law negligence cases, that is, they were brought and proceed upon the theory that the defendant was negligent in some particular or particulars in the baking, packing and putting on the market a pie which contained putrid, tainted, impure, deleterious, unwholesome and poisonous substance. In order to recover, plaintiffs must show by a preponderance of the evidence that the defendant negligently permitted said poisonous substance to become mixed with the contents of the pie, which was sold for human consumption. If the evidence and all lawful inferences therefrom fails to convince you that the defendant was thus negligent in permitting said poisonous substance to become mixed with the contents of the pie, then I charge you that plaintiff would not be entitled to recover." (2) "The court charges you that under the pleadings and the evidence in this case, no presumption of negligence on the part of the defendant arises from the simple facts that the plaintiffs were ill shortly after eating the pie in question. The negligence of the defendant in some one or more of the particulars as set out in the petitions of the plaintiffs must be proved by a preponderance of the evidence and if not so proved, the plaintiffs would not be entitled to recover." (3) "The court instructs you that if you should believe that some one or more of the ingredients of said pie contained a poisonous substance, that the defendant would not be liable in these cases unless it is shown to your satisfaction that the presence of said poisonous substance or substances was known to the defendant at the time that said pie was put on the market for human consumption, or that, in the exercise of ordinary care, the same should have been known by the defendant." (4) "Some evidence was brought out in these cases respecting the sources from which the ingredients were purchased by the defendant. The court charges you as to that evidence that if you believe from it that defendant used ordinary care in the selection of the places and firms from whom said materials were purchased and had no knowledge of any poisonous substance therein, and no reason from prior dealings with said firms, or from the general reputation of said firms that poisonous substances were liable to be contained therein, and further, that by the exercise of ordinary care in the mixing of said ingredients said poisonous substance could not have been discovered, pro-

vided you believe that such a substance existed in said material, then I charge you that the plaintiff could not recover on this phase of the case." The legal principles in these requested charges which are applicable and correct under the pleadings and evidence in the cases were covered by the court in his charge. Other portions of the requests not given in charge were inapplicable and incorrect under the pleadings and the evidence. Consequently, the trial judge did not err in failing to give the requested charges.

■ Special ground 10 of the motion in the case of W. A. Milligan is an assignment of error based on the contention that the verdict of $2000 was excessive. Recovery was sought in this case for pain and suffering, for which the measure of damages is the enlightened conscience of impartial jurors, and nothing appears in the record on which this court could justify an inference of gross mistake or undue bias. See Code, §§ 105-2003, 105-2015. This ground of the motion in the action of W. A. Milligan is without merit.

■ The verdict in favor of the plaintiff in each case was authorized by the evidence which is set out in the statement of the case. No error of law appears, and the court did not err in overruling defendant's motion for a new trial in each of these cases.

*Judgment affirmed. All of the Judges concur in all the rulings in the opinion, except divisions 4(a) and 4(b).*

SUTTON, C. J., and PARKER, J., concur in divisions 4(a) and 4(b), and MACINTYRE, P. J., and TOWNSEND, J., do not concur in all that is said in division 4(a), but do concur in division 4(b). FELTON and GARDNER, JJ., dissent from divisions 4(a) and 4(b), and from the judgment of affirmance.

FELTON, J., dissenting. My opinion is that the excerpt from the charge, complained of in ground three of the amended motions for new trials, is erroneous. The charge complained of is as follows: "Where either plaintiff might establish the unwholesome quality of the food and establish injury to the plaintiff from its consumption, and establish that the food as consumed by them was in the same condition as when it left the custody, possession and control of the defendant, these facts in themselves would sufficiently set forth defendant's negligence and make out a prima facie case, and then, gentlemen, the burden would be upon the

defendant to show that the defendant used due care in the premises." The exceptions to this charge are as follows: "(a) Because it was an incorrect statement of the law; (b) Because the same was an expression on the part of the court that the proof of certain facts constituted actionable negligence on the part of defendant; (c) Because the same imposed a greater burden upon the defendant than that imposed by law; (d) Because the same amounted to an invasion of the province of the jury in that the latter was instructed by the court that negligence must be inferred from the proof of certain facts, whereas the law prescribed, in a case wherein the doctrine of res ipsa loquitur is applicable, that the jury alone and exclusively has the right to infer negligence from certain proven facts. The court has no power or authority for so doing." The charge was error because it required the jury to infer negligence from the facts stated in the charge in the absence of an affirmative showing of diligence by the defendant. It gave to the rule of res ipsa loquitur the force of a presumption of law, which is not the law of Georgia, or it treated the proof of those facts as negligence per se, which is not true. So much has been written on this question that I do not relish writing any more but the error in the charge is so plain that I can not refrain. It is clearly the law of Georgia that, except in plain and indisputable cases, and this case is not predicated on that basis, upon proof of the happening of such occurrence as would not have happened without negligence, etc., a jury is authorized but not required to infer that the defendant was negligent. There is some loose language in a few of the Georgia cases which might indicate that the rule is treated as a presumption but an examination of all the cases will clearly show the contrary to be true. I believe that what confuses the majority in this case, and only two concur in the majority opinion, is that the common law is codified in Code § 105-1101. That Code section merely states what the law is and would be if there were no such section. It is not a part of the Pure Food Law. It is not a penal statute, and it requires the selling of unwholesome provisions to be done knowingly or carelessly. When the court told the jury that upon proof of the facts stated in the aforesaid excerpt, the burden would be on the defendant to exonerate itself he expressed an opinion as to what acts would be negligent and this a

court can not do unless the law itself defines the negligence; which it does not do in this case. This case is not predicated on negligence per se. It is based on common-law negligence. Under the judge's charge, if the defendant had not offered any evidence, and if the plaintiff had proved the facts stated in the charge to the satisfaction of the jury it would have been required to find for the plaintiff. I say that the jury should have been *permitted* to find in favor of the defendant even if the facts stated in the charge were proved, for the reason that under our law the jury may or may not apply the rule of res ipsa loquitur, or they may refuse to infer negligence from the proof of such facts as authorize the application of the rule.

It would prolong this discussion too long to discuss and cite outside authorities. Georgia law is plain and I cite only a few cases: *Palmer Brick Co.* v. *Chenall*, 119 *Ga.* 837(1-4) (supra) ; *Macon Coca-Cola Bottling Co.* v. *Crane,* 55 *Ga. App.* 573 (supra) ; *Cochrell* v. *Langley Mfg. Co.*, 5 *Ga. App.* 317 (63 S. E. 244) ; *Monahan* v. *National Realty Co.*, 4 *Ga. App.* 680 (62 S. E. 127) ; *Bowers* v. *Fred W. Amend Co.*, 72 *Ga. App.* 714 (35 S., E. 2d, 15). It is error to instruct a jury what ordinary care requires except where a particular act is declared by law to be negligence. *Farrar* v. *Farrar,* 41 *Ga. App.* 120(5) (152 S. E. 278), and cases cited. See especially *Gainesville Coca-Cola Bottling Co.* v. *Stewart*, 51 *Ga. App.* 102(4) (179 S. E. 734), in which the proper charge in a res ipsa loquitur case is shown. See also especially *Augusta Ry. & Electric Co.* v. *Weekly,* 124 *Ga.* 384 (52 S. E. 444), to the effect that in a res ipsa loquitur case it is erroneous for the court to charge the jury that a given state of facts either constitutes, or affords prima facie proof of, negligence, when there is no statutory definition—Section 105-1101 does not seek to define negligence. The fact that a plaintiff makes out a prima facie case does not justify a charge to that effect, without more, unless the prima facie case is one as a matter of law. If the jury must say whether there is a prima facie case even where the facts are not disputed it is error to charge that a prima facie case has been made and that the burden shifts upon proof of stated facts. Discussions in opinions and textbooks are often erroneous when given in charge to a jury so we get no help from definitions of a prima facie case here. *McPherson* v. *Capuano & Co.*, supra, was a ruling on a

nonsuit and surely if a nonsuit was erroneous the court could not say as a matter of law that the defendant was liable in the absence of exoneration. The same applies to *Copeland* v. *Curtis*, supra. The fact that the court, immediately before the excerpt excepted to, charged the jury that it expressed no opinion as to whether the facts stated in the excerpt had been proved or not, did not help matters any. Nevertheless, the meaning of what he told them was that if these facts were proved the defendant was negligent as a matter of law unless the defendant introduced other evidence and proved otherwise. I think the charge was error and that in approving it this court reverses the fixed law of this State. It is contrary to the Supreme Court decisions and will create confusion unless this court corrects its own misapplication of the law.

What is stated above applies, of course, merely to the charge as it relates to a case involving common-law negligence, where the rule of res ipsa loquitur applies.

I dissent from division 4(b) of the opinion, as well as 4(a), on the ground that even if a case is alleged which could be proved by showing a violation of the Pure Food Law, there is no evidence authorizing a finding that there was a violation of the Pure Food Law, as there is no evidence to show that the pie contained or consisted of putrid or unwholesome vegetable or animal substance. And even if the evidence did authorize such a finding, it was solely circumstantial, and the charge was error on the same principle as applied to common-law negligence. It is improper for a judge to state to a jury just what circumstantial evidence will prove a fact or make out a prima facie case unless it is true as a matter of law. As stated before, this dissent is not predicated on a holding by the majority that the facts stated by the court in the excerpt excepted to proved negligence as a matter of law in the sense that the facts proved as a matter of law constituted negligence or showed as a matter of law that the Pure Food Law was violated.

I am authorized to say that, GARDNER, J., concurs in this dissent.